IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ANGELA GREGORY,                    )
    Plaintiff,                     )
                      )
                      )
        v.                         )          Civil No. 3:19cv084 (REP)
                      )
ANDREW M. SAUL,[1]                 )
Commissioner of Social Security,   )
    Defendant                      )
_____)

REPORT AND RECOMMENDATION

On January 14, 2016, Angela Gregory ("Plaintiff") applied for Social Security Disability

Benefits ("DIB") and under the Social Security Act (the "Act"), alleging disability from anxiety,

depression, anger and the inability to concentrate, with an alleged onset date of April 1, 2014.

The Social Security Administration ("SSA") denied Plaintiff's claim both initially and upon

reconsideration.  Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claim in a

written decision and the Appeals Council denied Plaintiff's request for review, rendering the

ALJ's decision as the final decision of the Commissioner ("Defendant").

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred by:  (1) assigning little weight to the opinion of Plaintiff's treating

psychiatrist, Ramesh Agarwal, M.D.; and, (2) failing to order a consultative examination.  (Pl.'s

Mot. for Summ. J. & Br. in Supp. ("Pl.'s Mem.") (ECF No. 12) at 1-5.)  This matter now comes

---

[1]     On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term
as the Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d),
Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill
as the defendant in this matter.

before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the

parties' cross-motions for summary judgment, rendering the matter ripe for review.[2]  For the

reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF

No. 12) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be

GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

On January 14, 2016, Plaintiff filed an application for DIB with an alleged onset date of

April 1, 2014.  (R. at 194, 204.)  The SSA denied her claim initially on March 14, 2016, and

again upon reconsideration on April 13, 2016.  (R. at 85, 92.)  At Plaintiff's written request, the

ALJ held a hearing on September 20, 2017.  (R. at 25-80, 116.)  On March 22, 2018, the ALJ

issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as

disabled under the Act, because she could perform work existing in significant numbers in the

national economy.  (R. at 13-21.)  On December 1, 2018, the Appeals Council denied Plaintiff's

request for review, rendering the ALJ's decision as the final decision of the Commissioner

subject to review by this Court.  (R. at 1-3.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio v.*

---

[2]      The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as

adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig*

*v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Indeed, "the substantial evidence standard

'presupposes . . . a zone of choice within which the decision makers can go either way, without

interference by the courts.  An administrative decision is not subject to reversal merely because

substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F.

App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir.

1988)).

To determine whether substantial evidence exists, the court must examine the record as a

whole, but may not "undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472

(quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see also Biestek v. Berryhill*,

139 S. Ct. 1148, 1157 (2019) (holding that the substantial-evidence inquiry requires case-by-case

consideration, with deference to the presiding ALJ's credibility determinations).  In considering

the decision of the Commissioner based on the record as a whole, the court must "take into

account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d

1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488

(1951)).  The Commissioner's findings as to any fact, if substantial evidence in the record

supports the findings, bind the reviewing court to affirm regardless of whether the court

disagrees with such findings. *Hancock*, 667 F.3d at 477.  If substantial evidence in the record

does not support the ALJ's determination or if the ALJ has made an error of law, the court must

reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

### III.    THE ALJ'S DECISION

On September 20, 2017, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 25-80.) On March 22, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 13-21.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 13-21.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date (April 1, 2014) and her date last insured (September 30, 2014). (R. at 15.) At step two, the ALJ found that Plaintiff had the following severe impairments: organic mental disorders and anxiety disorders. (R. at

4

16.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 16.)

In assessing Plaintiff's RFC, the ALJ found that, through her date last insured, Plaintiff

could perform a full range of work at all exertional levels, with additional non-exertional

limitations.  (R. at 17.)  Specifically, Plaintiff could perform simple, routine tasks and could

concentrate for two-hour increments before requiring a standard break.  (R. at 17.)  Plaintiff

could work in only low-stress environments, occasionally interact with co-workers and

supervisors and never interact with the general public.  (R. at 17.)  And Plaintiff could best work

alone and not in tandem with others.  (R. at 17.)  At step four, the ALJ found that Plaintiff had no

past relevant work.  (R. at 20.)  At step five, the ALJ determined that Plaintiff could perform jobs

existing in significant numbers in the national economy, including the representative occupations

of hand packager, room attendant, addresser and general lithographic worker.  (R. at 20.)

Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act.  (R. at

21.)

## IV.    ANALYSIS

Plaintiff, age thirty-six at the time of this Report and Recommendation, previously

worked as a bartender/cook in a restaurant, though her earnings never rose to the level of

substantial gainful activity.  (R. at 196-97, 208-09.)  She applied for DIB, alleging disability

from anxiety, depression, anger and the inability to concentrate, with an alleged onset date of

April 1, 2014.  (R. at 204, 207.)  Plaintiff's appeal to this Court alleges that the ALJ erred by:  (1)

assigning little weight to the opinion of Plaintiff's treating psychiatrist, Dr. Agarwal; and, (2)

failing to order a consultative examination.. (Pl.'s Mem. at 1-5.)   For the reasons set forth below, the ALJ did not err in her decision.

A.      **The ALJ Did Not Err in Assigning Dr. Agarwal's Opinion Little Weight.**

Plaintiff argues that the ALJ failed to adequately explain her reasons for assigning little weight to Dr. Agarwal's opinion and that substantial evidence does not support the ALJ's decision. (Pl.'s Mem. at 1-5; Reply Br. ("Pl.'s Reply") (ECF No. 14) at 1-3.)   Defendant responds that the ALJ adequately assessed Dr. Agarwal's opinion and that substantial evidence supports the weight assigned. (Def.'s Mot. for Summ. J. & Br. in Supp. Thereof (ECF No. 13) ("Def.'s Mem.") at 12-14.)

During the sequential analysis, when the ALJ determines whether a claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1527.  When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence.  § 404.1527(c).  If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved.  § 404.1527(c)(2)-(6), (d).

6

Under the regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight. SSR 06-3p.[3] Acceptable medical sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. §§ 404.1513(a), 404.1527(a). The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants or therapists. § 404.1527(f); SSR 06-03p.[4] Under the applicable regulations and caselaw, a treating source's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. § 404.1527(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence or when it is not otherwise well-supported. § 404.1527(c)(3)-(4), (d).

---

[3]     Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the Rulings' policies into 20 C.F.R. § 404.1527(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed her claim on January 14, 2016, before this regulation took effect. (R. at 194.) The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claim.

[4]     The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. § 404.1527(f). The given examples are a non-exhaustive list. SSR 06-03p.

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scively v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.*

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. § 404.1527(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant is disabled as that term is defined under the Act. § 404.1527(d)(1). Although the regulations explicitly apply these enumerated factors only to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

Additionally, the ALJ may consider the timeframe of the evidence. The relevant time period spans from the alleged onset date (i.e., April 1, 2014) through the date last insured (i.e., September 30, 2014). (R. at 15.) Plaintiff must prove her disability within that timeframe. §§ 404.101(a), 404.130; *Johnson*, 434 F.3d at 655-56. Although the ALJ may consider evidence created after the date last insured, the evidence must provide a link to Plaintiff's condition *before* the date last insured. *Bird*, 699 F.3d at 340-41. Evidence "not linked in any manner to the claimant's condition before her [date last insured]" has no relevance on the ALJ's determination, and the ALJ does not need to retroactively consider it. *Johnson*, 434 F.3d at 655-56.

8

On September 13, 2017, Dr. Agarwal completed a mental assessment questionnaire. (R. at 270-72.) Dr. Agarwal opined that, between 2012 and 2014, Plaintiff could not maintain the attention and concentration necessary to complete "the simplest of job tasks" for at least six hours during an eight-hour workday, citing to Plaintiff's extreme anxiousness, limited attention span and disorganized thought processes. (R. at 270.) Dr. Agarwal noted that Plaintiff's major depression also inhibited her functioning. (R. at 270.) And Dr. Agarwal explained that, "on a bad day," Plaintiff could not maintain attention for at least six hours during the workday, because Plaintiff had difficulty consistently attending to tasks and details, and because Plaintiff's mental functioning decreased with stress, too much stimulation and unpredictable circumstances. (R. at 271.) Dr. Agarwal opined that Plaintiff had two or more "bad days" per month, noting that on most days, Plaintiff experienced symptoms of anxiety and depression with varying degrees of severity. (R. at 271.)

With respect to Plaintiff's ability to remember and carry out simple instructions from day to day, Dr. Agarwal opined that Plaintiff would "need to be reeducated often about even the simplest job tasks," because Plaintiff exhibited poor concentration, focus and racing thoughts, and because anxiety and stress limited Plaintiff's intellectual and processing abilities. (R. at 271.) Dr. Agarwal reiterated that Plaintiff's ability to remember job instructions would worsen "on a bad day." (R. at 272.) When asked whether Plaintiff discussed anger issues in a manner indicating that she would need a job with little or no contact with co-workers and supervisors, Dr. Agarwal did not provide a direct response, but he noted that Plaintiff had anger issues in her previous job and demonstrated low tolerance in stressful environments. (R. at 272 (describing Plaintiff as "[r]eactive to emotions").)

The ALJ afforded Dr. Agarwal's opinion little weight, because his findings proved inconsistent with "the limited longitudinal evidence of record, including examination findings." (R. at 19.)  To support her decision, the ALJ pointed to Plaintiff's activities of daily living, examination findings and treatment notes showing that Plaintiff's impairments "were well controlled" when she complied with her prescribed medication.  (R. at 19.)  The ALJ acknowledged Dr. Agarwal's treatment relationship with Plaintiff, but ultimately found Plaintiff's diagnosis of major depression "not fully supported by the evidence" considering the lack of mental health treatment that Plaintiff received.  (R. at 19.)

Contrary to Plaintiff's argument that the ALJ failed to adequately explain her reasons for affording Dr. Agarwal's opinion little weight, (Pl.'s Mem. at 4), the Court finds that the ALJ's explanation proves sufficient for the Court to conduct a meaningful review.  Indeed, in accordance with § 404.1527(d)(1), the ALJ appropriately noted the inconsistencies between Plaintiff's limited treatment records and Dr. Agarwal's opinion to justify the assignment of little weight.  Although the ALJ did not provide specific citations to the record, the ALJ identified a category of evidence — examination findings and treatment notes showing that Plaintiff's medications controlled her impairments — to support her assignment of weight.  *See Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) ("While the ALJ did not cite specific pages in the record, his explanation relied on and identified a particular category of evidence[: the doctor's office notes].");  (R. at 19.)

The ALJ also cited to Plaintiff's daily's activities to support her decision.  (R. at 19.)  Although the ALJ did not directly state which of Plaintiff's reported activities undermined Dr. Agarwal's findings, the ALJ provided a narrative explanation of Plaintiff's activities of daily living earlier in her opinion and referred back to that explanation in assigning Dr. Agarwal's

10

opinion little weight. (R. at 19 (referring to Plaintiff's activities "as discussed above").)
Specifically, the ALJ explained that Plaintiff engaged in a variety of activities "that invariably
called for some degree of concentration, including watching movies, simple meal preparation,
using Facebook, and attending/scheduling medical appointments." (R. at 19.) The ALJ also
noted that Plaintiff visited others daily and maintained good relations with her family and
friends. (R. at 19.) As the ALJ noted, these activities do not comport with Dr. Agarwal's
findings regarding Plaintiff's concentration deficits and social impairments. (R. at 19, 271-72.)
Accordingly, the ALJ supplied "good reasons" for affording Dr. Agarwal's opinion little weight
and sufficiently explained her reasons for doing so. § 404.1527(c)(2). Importantly, substantial
evidence supports the ALJ's assignment of weight.

As the ALJ noted, Plaintiff's limited mental health records, consisting of Dr. Agarwal's
own treatment notes, prove inconsistent with Dr. Agarwal's opinion. (R. at 19.) Plaintiff treated
with Dr. Agarwal at Virginia South Psychiatric and Family Services, P.C. ("Virginia South"),
from April 2012 through August 2017. (R. at 241-51, 257-69.) On April 4, 2012, Plaintiff
presented to Dr. Agarwal, complaining of stress and family problems, and Dr. Agarwal noted
that Plaintiff suffered from anxiety and depression. (R. at 251.) On July 18, 2012, Plaintiff
reported doing fine by herself and with her children, and Dr. Agarwal described Plaintiff's mood
as calm. (R. at 249-50.) On September 13, 2012, Dr. Agarwal described Plaintiff's condition as
unchanged, noting that Plaintiff suffered from anxiety, depression and attention deficit disorder
("ADD"), for which he prescribed Valium and Adderall. (R. at 250.)

In November and February 2013, Plaintiff reported doing well and working part-time.
(R. at 247-48.) Plaintiff displayed a calm and stable mood, and Dr. Agarwal described Plaintiff's
condition as stable. (R. at 247-48.) On June 26, 2013, Plaintiff reported working part-time, but

stated that she still experienced anxiety attacks and could not focus. (R. at 246.) Dr. Agarwal

continued Plaintiff's Valium and Adderall prescriptions, and described her condition as in partial

remission. (R. at 246.) On October 16, 2013, Dr. Agarwal noted that Plaintiff was "doing ok"

and working part-time, and he again described Plaintiff's mood as calm and her condition as

stable. (R. at 245.) On January 29, 2014, Plaintiff reported that she had stopped working due to

continued anxiety and trouble focusing, but Dr. Agarwal nonetheless described her condition as

in partial remission. (R. at 244.)

On April 3, 2014, Dr. Agarwal noted that Plaintiff was "doing well" and had worked one

day that week, though she still suffered from anxiety. (R. at 243.) Similarly, on July 2, 2014,

Plaintiff told Dr. Agarwal that she had experienced an anxiety attack, but she had worked one

day that week and reported doing well. (R. at 242.) During both appointments, Dr. Agarwal

described Plaintiff's condition as in partial remission. (R. at 242-43.) Notably, these two

appointments constitute the only medical records dated within the relevant period.

On October 22, 2014, Dr. Agarwal noted that Plaintiff suffered another anxiety attack,

but described Plaintiff's condition as stable, continuing Plaintiff's prescriptions for Valium and

Adderall. (R. at 241.) On February 4, 2015, Dr. Agarwal described Plaintiff's condition as in

partial remission and refilled her prescriptions. (R. at 269.) Although Plaintiff complained of

continued anxiety attacks in May 2015, Dr. Agarwal described Plaintiff's condition as stable.

(R. at 268.) In July 2015, Dr. Agarwal also noted that Plaintiff appeared calm and stable. (R. at

267.) On September 30, 2015, Plaintiff reported feeling depressed and anxious and having

difficulty sleeping, so Dr. Agarwal prescribed additional medications for Plaintiff and continued

her prescriptions for Valium and Adderall. (R. at 266.) On December 10, 2015, Dr. Agarwal

noted that Plaintiff continued to suffer from anxiety and depression, but he described her

12

condition as in partial remission.  (R. at 265.)  And Dr. Agarwal described Plaintiff's condition

as unchanged in February 2016.  (R. at 264.)

On May 18, 2016, Plaintiff reported experiencing mood changes and feeling depressed.

(R. at 564.)  On July 28, 2016, Plaintiff reported that she continued to experience anxiety attacks,

but Dr. Agarwal again described Plaintiff's condition as in partial remission.  (R. at 263.)  On

September 14, 2016, Plaintiff reported doing better and sleeping okay, though she no longer

worked.  (R. at 261.)  Plaintiff exhibited decreased anxiety, and Dr. Agarwal described Plaintiff's

condition as in partial remission.  (R. at 261.)  On December 28, 2016, Plaintiff reported doing

well and working "some."  (R. at 260.)  Plaintiff displayed a calm mood, and Dr. Agarwal

described her condition as in partial remission.  (R. at 260.)

On March 16, 2017, Plaintiff again reported doing well.  (R. at 258.)  On May 18, 2017,

Dr. Agarwal noted that Plaintiff experienced decreased anxiety and depression, and he described

Plaintiff's condition as stable.  (R. at 258.)  Finally, on August 11, 2017, Plaintiff reported doing

well and sleeping okay.  (R. at 257.)  Dr. Agarwal noted an increase in Plaintiff's depression and

a decrease in her anxiety, describing Plaintiff's condition as stable and continuing her

prescriptions.  (R. at 257.)

Throughout her treatment notes, Dr. Agarwal reported that Plaintiff experienced anxiety

attacks, ADD, depression and, on occasion, mood changes, difficulty focusing and trouble

sleeping.  (R. at 241-51, 257-69.)  Dr. Agarwal described Plaintiff's struggles in taking care of

her three children, the fact that the fathers of two of her children were incarcerated and ongoing

custody battles as stressors that exacerbated Plaintiff's condition, (R. at 244-45, 251, 268), and

he prescribed medication, including Valium and Adderall, to treat Plaintiff's impairments, (R. at

241-51, 257-69).  Despite Plaintiff's struggles, she reported doing well in November 2013,

February 2013, January 2014, July 2014, December 2016, March 2017 and August 2017, (R. at 243-42, 247-48, 258-57, 260), and Plaintiff reported working throughout her treatment, (R. at 242-43, 247-48, 260). Moreover, Dr. Agarwal frequently described Plaintiff's condition as stable, (R. at 241, 245, 248-48, 257-58, 267), or in partial remission, (R. at 238, 242-44, 263, 265, 269), and he never observed Plaintiff's condition worsening. The ALJ also found that Plaintiff's limited mental health treatment did not fully support her diagnosis of depression. (R. at 19.) Indeed, Plaintiff's treatment consisted solely of medication and counseling at Virginia South. Overall, Plaintiff's treatment notes support the ALJ's finding that Plaintiff's medications successfully controlled her symptoms, undermining the degree of limitation endorsed by Dr. Agarwal. (R. at 19.)

That said, the Court finds that the ALJ erred by mischaracterizing the extent to which Plaintiff could perform some of her activities of daily living to justify the weight assigned to Dr. Agarwal's opinion. For example, although the ALJ stated that Plaintiff lived alone and cared for her three children, (R. at 19), during her hearing, Plaintiff testified that her mother "did everything" for her children, including cooking the children's meals and preparing them for school, (R. at 56-57). The ALJ also stated that Plaintiff could maintain her hygiene and care for her needs, but Plaintiff testified that, although she could use the bathroom and shower, she sometimes forgot to brush her teeth "for weeks or months," (R. at 60-63). And, although the ALJ wrote that Plaintiff drove unaccompanied, (R. at 19), Plaintiff testified that she could not drive alone, because she had "weird thoughts about where [her] vehicle might go," (R. at 75). Finally, the ALJ stated that Plaintiff visited others daily, (R. at 19), but Plaintiff reported visiting with her brother and sister-in-law only once per week, (R. at 70), though Plaintiff's mother testified that she spent most days with Plaintiff, (R. at 32). "An ALJ may not consider the *type*

14

of activities a claimant can perform without also considering the *extent* to which she can perform them;" therefore, the ALJ's failure to properly characterize the extent to which Plaintiff performed some of the activities to which the ALJ cited constitutes a legal error. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis supplied) (citing *Brown v. Commissioner*, 873 F.3d 251, 263 (4th Cir. 2017)).

When confronted with an error committed by the ALJ, the Court must determine whether to apply the harmless error doctrine. *See Mascio*, 780 F.3d at 639 (analyzing whether the ALJ's error in the credibility assessment constituted only harmless error); *Sharp v. Colvin*, 660 F. App'x 251, 252 (4th Cir. 2016) (deeming the ALJ's errors harmless). The burden of establishing a harmful error rests on "the party attacking the agency's determination." *Shineski v. Sanders*, 556 U.S. 396, 409 (2009). In determining the significance of an error, courts must consider, among other factors, "an estimation of the likelihood that the result would have been different . . . ." *Id.* at 411. "[W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (internal quotations and citations omitted).

Against this standard, the Court finds that the ALJ's failure to discuss the extent to which Plaintiff could perform each activity cited in her opinion constitutes harmless error, because, despite the discrepancies between Plaintiff's testimony and the ALJ's description of certain activities, the ALJ appropriately characterized the remainder of Plaintiff's reported activities and substantial evidence otherwise supports the ALJ's assessment of Dr. Agarwal's opinion, leaving little chance that the ALJ would have reached an opposite conclusion had she not erred. *See Hickman v. Berryhill*, 2018 WL 3655905, at *4 (W.D.N.C. Aug. 2, 2018) (failure to discuss the

15

extent to which plaintiff could perform daily activities did not require remand, "because the ALJ

relied on other evidence to evaluate [the p]laintiff's symptoms and . . . . engaged in a thorough,

well-reasoned credibility analysis" (internal quotation marks omitted)).

For example, the ALJ noted that Plaintiff engaged in a variety of activities that

"invariably called for some degree of concentration, including simple meal preparation, watching

movies, using Facebook, and attending/scheduling medical appointments," which the record

supports. (R. at 19.) Indeed, Plaintiff testified that she prepared microwavable meals, enjoyed

listening to music and posted on Facebook, though not every day. (R. at 65-66.) Plaintiff also

testified that she watched movies with her boyfriend, whom she met through Facebook. (R. at

65-66, 74.) And, as the ALJ noted, Plaintiff set up her own medical appointments. (R. at 68.)

These activities do not comport with Dr. Agarwal's finding that Plaintiff could not maintain the

concentration necessary to complete simple, work-related tasks. (R. at 270.)

With respect to social functioning, Dr. Agarwal opined that Plaintiff's anger issues and

low tolerance for stressful environments made it difficult for her to maintain even little

interaction with co-workers and supervisors. (R. at 272.) The ALJ, on the other hand, found that

Plaintiff's testimony demonstrated that she could function in an appropriate manner in places

like grocery stores, doctors' offices and other facilities. (R. at 19.) Indeed, Plaintiff testified that

she grocery-shopped with her mother and children without incident. (R. at 63.) When

questioned about her work history in restaurants, Plaintiff testified that she left previous

positions, because she felt "really angry about something" or became frustrated and cried. (R. at

71.) But Plaintiff also stated that she somewhat enjoyed working in restaurants, because she "got

to get out and actually be around people." (R. at 70.) Sometimes, Plaintiff would "freak out"

while working, but she had no issues so long as she got along with her colleagues. (R. at 70.)

16

When Plaintiff first received her diagnosis of anxiety and depression, she stated that she again

"freaked out" and her mom had to "drag [her] out the room." (R. at 72.) However, after this

initial episode, Plaintiff attended appointments with Dr. Agarwal without any behavioral issues.

(R. at 67-68.) Plaintiff also testified that she regularly saw a social worker in Dr. Agarwal's

office, though the record does not contain any notes from the social worker, and Plaintiff stated

that she did not recall the social worker taking notes. (R. at 67-68.) The ALJ further noted that

Plaintiff maintained good relationships with family and friends, (R. at 19), which aligns with

Plaintiff's testimony that her mother helped her take care of her children and that she spent time

watching movies with her boyfriend, (R. at 56-57, 65-66). Moreover, although Plaintiff testified

that she did not have any friends, she remained close with her sister-in-law, and Plaintiff's

brother and sister-in-law visited her weekly. (R. at 75.) This testimony shows that, contrary to

Dr. Agarwal's opinion, Plaintiff could maintain at least some level of interaction with co-

workers and supervisors. (R. at 272.)

Accordingly, despite the ALJ's error in mischaracterizing Plaintiff's activities of daily

living, the ALJ appropriately considered Plaintiff's other reported activities and substantial

evidence otherwise supports the ALJ's assessment of Dr. Agarwal's opinion, rendering any error

harmless.

**B.      The ALJ Did Not Err By Failing to Order a Consultative Examination.**

Plaintiff also argues that the ALJ erred by failing to order a consultative examination.

(Pl.'s Mem. at 3.) Defendant responds that the ALJ appropriately developed the record and that

substantial evidence supports the ALJ's decision. (Def.'s Mem. at 14.)

The ALJ must inquire into issues necessary for adequate development of the record;

however, "the ALJ is not required to function as the claimant's substitute counsel, but only to

17

develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).

Although the ALJ must make a reasonable inquiry into a claim of disability, the ALJ has no duty

to "go to inordinate lengths to develop a claimant's case." *Thompson v. Califano*, 556 F.2d 616,

618 (1st Cir. 1977).  The Fourth Circuit has explained that "the ALJ has a duty to explore all

relevant facts and inquire into the issues necessary for adequate development of the record, and

cannot rely only on the evidence submitted by the claimant when the evidence is inadequate" for

the purpose of determining whether the claimant is disabled. *Cook v. Heckler*, 783 F.2d 1168,

1173 (4th Cir. 1986).  Thus, the need to develop the record is triggered when there is insufficient

or inconsistent evidence.  20 C.F.R. § 404.1520b.  Discretion lies with the ALJ to determine

whether to further develop the record or seek additional information from medical sources.

§ 404.1520b(b).

Under the applicable regulations, a consultative examination may be procured for the

claimant when the record must be further developed to seek additional information or resolve

inconsistencies.  § 404.1519.  Determinations to purchase a consultative examination are made

on an individual basis, in accordance with the provisions provided in 20 C.F.R. § 404.1519a-f.

The regulations provide that consultative examinations may be purchased where the claimant's

medical records are insufficient.  § 404.1519a.  Further, a consultative examination may be

sought "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is

insufficient to allow [the Commissioner] to make a determination or decision on [a claimant's]

claim."  § 404.1519a(b).

Here, the Court finds that the ALJ did not err by failing to order a psychological

consultative examination, because the record contained sufficient and consistent evidence

regarding Plaintiff's mental impairments.  In March and April 2016, state agency psychological

18

consultant Howard S. Leizer, Ph.D., reviewed Plaintiff's claim both initially and on

reconsideration, concluding that the record contained insufficient evidence between Plaintiff's

alleged onset date and her date last insured to evaluate the severity of Plaintiff's claim. (R. at 88-

89, 95-97.) Indeed, the record contains only two appointments during the relevant period, both

of which record Plaintiff's condition as relatively stable. During Plaintiff's April 3, 2014

appointment, for example, Dr. Agarwal noted that Plaintiff was "doing well" and worked one

day that week, though she still suffered from anxiety. (R. at 243.) Similarly, on July 2, 2014,

Plaintiff told Dr. Agarwal that she had an anxiety attack, but she worked one day that week and

she again reported doing well. (R. at 242.) And Dr. Agarwal described Plaintiff's condition as

in partial remission during both visits. (R. at 242-43.)

Although Dr. Leizer found the two appointments during the relevant period insufficient

to assess Plaintiff's mental RFC, the ALJ did not err when she, considering the evidence as a

whole, made her decision without ordering a consultative examination.[5]  As mentioned, Plaintiff

reported doing well and being able to work during several of her appointments, (R. at 242-43,

---

[5]       The Court further rejects Plaintiff's argument that the ALJ somehow erred by failing to
have the state agency medical consultant review Dr. Agarwal's 2017 opinion. (Pl.'s Mem. at 3.)
As Defendant points out, Plaintiff fails to "explain how a 2017 opinion that was . . . inconsistent
with . . . treatment notes would have influenced a medical expert tasked with reviewing the
record to determine Plaintiff's functional capabilities in 2014." (Def.'s Mem. at 13.)  Nor does
Plaintiff point to any authority requiring the ALJ to direct the state agency consultant to review
evidence accrued after the consultant conducted his assessment.

The Court likewise rejects Plaintiff's contention that, after assigning less-than-controlling weight
Dr. Agarwal's opinion, the ALJ could rely only on the state agency physician opinions to
formulate Plaintiff's RFC. (*See* Pl.'s Mem. at 3 (suggesting that, because the ALJ assigned less-
than-controlling weight to Dr. Agarwal's opinion, the regulations required "the ALJ to base [her]
decision on non-treating sources . . .")  As Defendant correctly argues, the regulations do not
require ALJs to rely exclusively on medical opinions to formulate an RFC, and in fact reserve
the final RFC determination to the Commissioner. (Def.'s Mem. at 13 (citing § 404.1527(d) and
*Baker v. Colvin*, 2016 WL 3581859, at *7 (E.D. Va. June 7, 2016)).)

247-48, 258-57, 260), and Dr. Agarwal frequently described Plaintiff's condition as stable, (R. at 241, 245, 248-48, 257-58, 267), or in partial remission, (R. at 238, 242-44, 263, 265, 269), which supports the ALJ's finding that medication controlled Plaintiff's symptoms relatively well, (R. at 19). And Plaintiff's testimony — including that she prepared simple meals, made her own appointments, watched movies, listened to music, maintained a relationship with her boyfriend, used Facebook, visited with her brother and sister-in-law weekly and shopped with her mother and children — supports the ALJ's finding that Plaintiff retained the capacity to maintain at least some degree of concentration and interaction with others. (R. at 19, 56-57, 65-68, 70-71, 74.)

Although the ALJ assigned little weight to Dr. Agarwal's opinion — the only opinion of record concerning Plaintiff's mental impairments — the ALJ did not "substitute [her] views on the severity of [Plaintiff's] psychiatric problems for that of a trained professional." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 695 (W.D. Va. 2009) (quotations and citations omitted) (holding that ALJ erred by failing to order consultative examination, because record contained no opinions assessing plaintiff's condition and no psychiatric or psychological evidence supported ALJ's decision that plaintiff's mental impairments constituted non-severe impairments). Rather, the ALJ considered Dr. Agarwal's opinion, appropriately assigned it little weight in light of contrary evidence, including Dr. Agarwal's own psychiatric findings, and proceeded to craft an RFC that accounted for all of Plaintiff's substantiated mental impairments. (R. at 17-19.)

Specifically, the ALJ accounted for Plaintiff's moderate limitations in concentration, persistence and pace and her moderate limitations in understanding, remembering and applying information by limiting Plaintiff to simple, routine tasks in a low-stress work environment and finding that Plaintiff could concentrate and focus in two-hour increments before requiring a standard break. (R. at 16-19.) And the ALJ accounted for Plaintiff's moderate limitations in

interacting with others and her mild limitations in adapting and managing herself by limiting Plaintiff to a job that she could perform alone, with occasional interaction with co-workers and supervisors and no interaction with the general public. (R. at 16-19.) Because the record contained consistent and sufficient — albeit limited — evidence upon which the ALJ could assess Plaintiff's claim, the ALJ did not err by failing to order a consultative examination.

## V.    CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: September 3, 2019

21